IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY AARON BAXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 12-1294-JDT-egb |
| | ) | |
| STATE OF TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING PLAINTIFF'S UNTIMELY OBJECTION,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

The *pro se* Plaintiff, Timothy Aaron Baxter, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a civil rights complaint on December 21, 2012. (ECF No. 1.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b). (ECF No. 5.) On May 1, 2013, the Court dismissed the complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2); judgment was entered on May 3, 2013. (ECF Nos. 6 & 7.) Plaintiff then filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 8), which the Court granted on October 4, 2013, (ECF No. 10). The Court granted Plaintiff's leave to amend his complaint to assert an Eighth Amendment claim against Defendant Kevin Gray, M.D., for

lack of adequate medical care, and directed that process be issued and served on the Defendant. (*Id.*) United States Magistrate Judge Edward G. Bryant entered a scheduling order on January 17, 2014, pursuant to which discovery was to be completed by June 20, 2014. (ECF No. 20.) Plaintiff filed an amended complaint on January 30, 2014, which alleges both Eighth Amendment claims and state law claims of gross negligence. (ECF No. 23.)

Plaintiff filed a motion to compel discovery on June 23, 2014 (ECF No. 31), which was referred to Magistrate Judge Bryant for disposition. On June 30, 2014, Defendant Gray filed a motion for summary judgment. (ECF No. 34.) Plaintiff then filed a motion for an extension of the discovery deadline on July 1, 2014 (ECF No. 35); that motion also was referred to the Magistrate Judge. In Plaintiff's response to the motion for summary judgment, filed July 11, 2014 (ECF No. 38), he asked the Court to defer a ruling on the motion, pursuant to Federal Rule of Civil Procedure 56(d),[1] because of the pending motion to compel. On September 4, 2014, Plaintiff filed a motion to amend the motion to compel, in which he sought a hearing on the motion and a status conference in order to discuss reopening discovery. (ECF No. 48.) That motion was referred to Magistrate Judge Bryant as well.

On January 13, 2015, the Magistrate Judge issued an order partially granting and partially denying Plaintiff's motion to compel discovery, but denying the requests to reopen

---

[1] Formerly Rule 56(f).

discovery. (ECF No. 56.) On February 18, 2015, Plaintiff filed an untimely objection. (ECF No. 58.) Defendant filed a response to that objection (ECF No. 59), and Plaintiff filed a reply (ECF No. 60).

Plaintiff's objection to the Magistrate Judge's order is DENIED. The only reason given for the belated filing is that on January 16, 2015, Plaintiff asked the librarian at the NWCX to make him a copy of the order. However, the librarian misplaced the order, and it was not found until February 9, 2015. (ECF No. 58 at 3 (letter from NWCX librarian).) Plaintiff has offered no explanation for why it was necessary for him to have a copy of the Magistrate Judge's order made before preparing an objection.

In any event, the objection also is not well taken on the merits. Plaintiff has not specifically objected to the Magistrate Judge's ruling on the individual discovery requests. Instead, Plaintiff first asserts that he was given only five months for discovery, whereas in some other cases the litigants are given longer. However, each case is unique, and such comparisons are not particularly helpful. Plaintiff further asserts that the Defendant delayed discovery by failing to provide sufficient answers to his requests. As stated, Magistrate Judge Bryant partially granted the motion to compel, and the Defendant has now complied with that order by supplying the required information and documents. (*See* ECF No. 57.) Furthermore, the scheduling order in this case was entered on January 17, 2014, but Plaintiff chose not to serve any discovery until April 14, 2014, even though an appearance was made

on Defendants' behalf on November 22, 2013.[2] While the NWCX may have been on lockdown for portions of that time, the lockdowns were only from March 17 through April 2, 2014, and from May 23 through June 17, 2014. Thus, as the Magistrate Judge stated, Plaintiff has had ample time to conduct discovery in this case. The Court DENIES any further request for additional discovery.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

---

[2] Cases filed by *pro se* prisoners are exempted from Fed. R. Civ. P. 26(f)'s requirement that the parties participate in a discovery planning conference. Thus, Plaintiff was not required to wait until a scheduling order was entered to begin discovery. *Cf.* Fed. R. Civ. P. 26(d)(1) (in non-exempt cases, parties may not seek discovery before the Rule 26(f) planning conference).

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

4

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In the amended complaint, Plaintiff alleges that on December 18, 2011,[4] while he was incarcerated at the Madison County Criminal Justice Center ("CJC") in Jackson, Tennessee, he was severely beaten and left unconscious by three other inmates. (ECF No. 23 at 4, ¶ 14.) He alleges that he was taken to the booking area where he lay "on a hard cold concrete slab unable to move about" for three days without medical care. (*Id.* ¶¶ 15-16.) Plaintiff further alleges that he was taken to an outside medical provider for x-rays on December 19, 2011. He was experiencing severe pain in his upper and lower jaw and radiating pain in his lower back and legs. (*Id.* ¶¶ 17-18.) After being returned to the CJC that same day, he saw Defendant Gray on December 21, 2011. While examining Plaintiff, Gray allegedly "began to punch [Plaintiff] several times in the lower back area, exactly where [Plaintiff] was suffering from pain and discomforts." (*Id.* ¶¶ 23-25.) Plaintiff screamed and asked why Gray was hitting him, and Gray stated, "I can't do nothing for you, ask your pod officer if you need some ibuprofen, I'm not giving you anything." (*Id.* ¶ 26.) Plaintiff alleges that he has continued to experience pain, disfigurement and other symptoms. (*Id.* ¶¶ 28-30.) He contends that Defendant Gray's failure to provide adequate medical treatment amounted to

---

[4] The dates that Plaintiff provided in the complaint and amended complaint for the events at issue are not accurate. According to the medical evidence in the record, the assault occurred on December 18, 2011, Plaintiff was taken for x-rays on December 19, 2011, and he was examined by the Defendant on December 21, 2011. Plaintiff does not dispute those dates.

deliberate indifference in violation of the Eighth Amendment and gross negligence under Tennessee law.

In support of the motion for summary judgment, Defendant Gray has submitted his affidavit (Gray Aff., ECF No. 34-3) and portions of Plaintiff's medical records (ECF No. 34-4). Plaintiff has submitted no additional evidence in opposition to the motion.

The Eighth Amendment[5] to the United States Constitution prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992);

---

[5] Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). However, a detainee's Fourteenth Amendment rights are equivalent to those of a convicted inmate under the Eighth Amendment in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts*, 773 F.2d at 723. Thus, even though Plaintiff may have been a pre-trial detainee while at the CJC, the Eighth Amendment analysis is the same.

*Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). For purposes of this order only, the Court will presume the injuries Plaintiff sustained in the December 18, 2011, assault constituted a serious medical need.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838. Furthermore, a mistaken diagnosis or negligent treatment of a medical condition, even if it amounts to medical malpractice, "does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Comstock*, 273 F.3d at 703

(the subjective standard of deliberate indifference "is meant to prevent the constitutionalization of medical malpractice claims").

Defendant Gray states in his affidavit that Plaintiff was seen by a nurse shortly after the assault on December 18, 2011, given an ice pack and scheduled to be seen by Gray the next day. (Gray Aff. ¶ 12, ECF No. 34-3 at 2.) In his response to Defendant's statement of undisputed facts, Plaintiff disputes that he was seen by the nurse, although he has submitted no evidence to refute Gray's assertion.[6] However, even if Plaintiff was not seen by a nurse immediately after the assault, Defendant's affidavit and Plaintiff's medical records show that Plaintiff was examined by Defendant Gray the next day, December 19, 2011. Gray examined Plaintiff, prescribed medication, and ordered x-rays of his jaw and facial bones, and of his lumbar and cervical spine. (Gray Aff. ¶ 13, ECF No. 34-3 at 2; ECF No. 34-4 at 1-2.) While Plaintiff disputes that he was seen by the Defendant on December 19th, medical records from West Tennessee Healthcare also show that Plaintiff was taken for x-rays on that date, which were ordered by Defendant Gray. (ECF No. 34-4 at 3-10.)

While the facial and jaw x-rays were done as ordered and showed no abnormalities (*id.* at 3-4), the spinal x-rays ordered by Defendant Gray either were not done by West Tennessee Healthcare or were done but not actually provided to Gray. (*See* ECF No. 32 at 4-5 (Defendant's response to Plaintiff's motion to compel).) However, Defendant Gray did examine Plaintiff again on December 21, 2011, and noted that his findings were unchanged.

---

[6] The medical records submitted by Defendant do not show whether Plaintiff was or was not seen by a nurse on December 18, 2011.

9

He states that he determined in accordance with the proper duty of care that no further treatment was necessary.[7] (Gray Aff. ¶¶ 15-16, ECF No. 34-3 at 3; ECF No. 34-4 at 11-12.) Defendant asserts that he did not, at any time, assault or use inappropriate force in examining or treating Plaintiff. (Gray Aff. ¶¶ 5, 7, ECF No. 34-3 at 1-2.) Defendant further asserts that he treated Plaintiff at all times according to his professional medical judgment, that he acted in good faith and pursuant to professional medical standards, and that he provided Plaintiff with treatment in accordance with the recognized standard of professional care. (*Id.* ¶¶ 4-6.)

Defendant also asserts that Plaintiff did not, at any time after December 21, 2011, complain to him about any medical issues. (*Id.* ¶ 17, at 3.) In his response to Defendant's statement of material facts, Plaintiff disputes this assertion. He states that he filed a grievance complaining that he was in serious pain because of the inadequate medical treatment and that Defendant Gray failed to follow-up with him after the assault. (ECF No. 39 at 6.) However, there is no such grievance in the record. Plaintiff does not allege in the amended complaint, and he has submitted no evidence to show, that he ever sought further medical treatment from Defendant Gray or any other medical provider, at the CJC or elsewhere, for injuries sustained in the December 18th assault.

Plaintiff has submitted no evidence to rebut Defendant's affidavit and his medical records. Therefore, he has made no showing that Defendant acted with the deliberate indifference necessary to establish an Eighth Amendment violation. While Plaintiff may not

---

[7] Plaintiff was continued on various medications for several more days. (ECF No. 34-4 at 13-16.)

10

have received the treatment he believed necessary, "[a] prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation." *DeFreeze v. Zuberi*, 39 F. App'x 137, 138 (6th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. at 107).

The Court finds there are no genuine issues of material fact in dispute with regard to Plaintiff's Eighth Amendment claims.

Plaintiff's claim of gross negligence is a claim that sounds in medical malpractice. Such claims are governed by the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-115 through -122, formerly called the Tennessee Medical Malpractice Act. The THCLA contains a number of procedural requirements that a plaintiff must satisfy. Section 29-26-121 requires a plaintiff who files a healthcare liability action to give written notice of the potential claim at least sixty day prior to filing a complaint. Furthermore, in a malpractice case, the negligence of the defending health care provider usually must be proved by expert testimony. *Id.*, § 29-26-115(b); *Chambliss v. Stohler*, 124 S.W. 3d 116, 119 (Tenn. Ct. App. 2003). Where that is the case, § 29-26-122 of the THCLA also requires the plaintiff to file, with the complaint, a certificate from an expert stating there is a good faith basis to maintain the action.

Plaintiff did not give notice of any malpractice claim at least sixty days prior to the filing of the complaint in this case and did not file a certificate of good faith with the complaint. Although Plaintiff contends that his *pro se* prisoner status should excuse his failure to comply with these requirements, the Tennessee courts have rejected that argument. *See Mathes v. Lane*, No. E2013-01457-COA-R3-CV, 2014 WL 346676, at *6-8 (Tenn. Ct.

11

App. Jan. 30, 2014) (plaintiff's status as a *pro se* prisoner did not excuse his failure to comply with the procedural requirements for a medical malpractice claim); *Brandon v. Williamson Med. Ctr.*, 343 S.W. 3d 784, 789-92 (Tenn. Ct. App. 2010) (plaintiff's *pro se* status did not constitute good cause or excusable neglect for failure to file a certificate of good faith). Therefore, Plaintiff's state law medical malpractice claims are subject to dismissal.

For the foregoing reasons, the Court finds that Defendant is entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716

F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

   s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE